774 So.2d 1243 (2000)
Brenda CLELLAND
v.
Dr. Michael HAAS and St. Paul Fire & Marine Insurance Co.
No. 99 CA 2971.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*1244 Delbert G. Talley, Covington, for Plaintiff/Appellant, Brenda Clelland.
Ambrose K. Ramsey, III, Metairie, for Defendants/Appellees, Dr. Michael Haas and St. Paul Fire & Marine Insurance Co.
Before: CARTER, C.J., WEIMER, and CONQUE,[1] JJ.
CARTER, C.J.
This is an appeal from a judgment dismissing plaintiff's medical malpractice action based on a jury's finding that defendant did not breach the standard of care in his discharge instructions, evaluation, diagnosis and treatment of plaintiff.

FACTUAL BACKGROUND
On the morning of Friday, October 13, 1995, plaintiff, Brenda Clelland, went to the emergency room at St. Tammany Parish Hospital complaining of a sudden onset of severe mid-abdominal pain. In the history taken by the triage nurse, plaintiff complained of nausea, but she denied vomiting or diarrhea. Additionally, plaintiff told the triage nurse that on the way to the hospital, the pain would intensify when plaintiff's vehicle would go over bumps in the road.
Plaintiff gave a similar history to defendant, Dr. Michael Haas, the treating emergency room physician; however, plaintiff denied experiencing nausea and described her pain as general lower abdominal pain. Plaintiff also revealed a history of ovarian cysts to Dr. Haas. Plaintiff's vital signs *1245 were normal and she did not have fever. Dr. Haas performed a physical examination of plaintiff. This examination revealed that plaintiff was not experiencing rebound tenderness or rigidity in her abdomen, symptoms that, if present, would have indicated appendicitis. Dr. Haas ordered a chemical blood analysis, which revealed an elevated white blood cell count of 14,000, and thus the probable existence of infection. Based on the history given by plaintiff and the physical examination findings, Dr. Haas ordered a pelvic ultrasound, which he hoped would reveal any uterine or other female organ problems, in addition to any abdominal problems. According to Dr. Haas, a pelvic ultrasound examines the lower abdomen, which includes the appendix. Dr. Haas did not order an abdominal ultrasound because that would have checked for problems in the upper abdomen such as the gallbladder, liver and spleen, all areas that did not concern Dr. Haas in light of the plaintiffs history and physical examination results. At some point during the evaluation of plaintiff, Dr. Haas injected plaintiff with Toradol, an analgesic, to lessen the inflammation and "knock" down plaintiffs pain without clouding Dr. Haas's evaluation of plaintiff.
Dr. Don Saucier, the doctor interpreting the ultrasound, detected a pocket of fluid in the posterior cul-de-sac, which Dr. Saucier attributed to a ruptured ovarian cyst. Dr. Saucier also noted the absence of cysts within the left ovary, which cysts had been present in the past.
Within two hours of her admission to the emergency room, plaintiffs pain had subsided. Based on the history, physical exam, test results and the subsidence of plaintiffs pain, Dr. Haas concluded that plaintiff was probably suffering from a ruptured ovarian cyst, which pain should fully subside in a couple of days. Accordingly, Dr. Haas discharged the plaintiff with written instructions to follow up with her private doctor on the following Monday, October 16. Dr. Haas also gave plaintiff two prescriptions, one for an analgesic, to take the edge off the pain, and one for an antibiotic. Although not supported in the written discharge instructions, Dr. Haas contended that he verbally told plaintiff to return to the emergency room or call her doctor if her symptoms returned or worsened.
Plaintiff did not feel as bad on Saturday as she had felt on Friday. However, early Sunday morning, October 15, plaintiff awoke with a high fever, diarrhea, nausea and intense pain in her lower right abdomen. When Tylenol failed to relieve the fever or the pain, plaintiff returned to the emergency room on Sunday morning, where she was examined by Dr. Joan Curtis. Upon taking plaintiff's history, noting her symptoms and conducting a physical examination, Dr. Curtis concluded that plaintiff was suffering from appendicitis and called a surgeon, Dr. Michael Carpenter, to confirm the diagnosis. Dr. Carpenter agreed with the appendicitis diagnosis and immediately performed an appendectomy on plaintiff. During the appendectomy, it was discovered that plaintiff's appendix had ruptured. Plaintiff remained in the hospital for about four days after the appendectomy.
Following the appendectomy, plaintiff suffered several complications that she contends were related to the ruptured appendix. These complications included a peritoneal abscess that required draining, an incisional hernia that required surgery, a seroma that required draining, a staph infection and a sensory nerve problem.

PROCEDURAL HISTORY
Plaintiff filed a medical malpractice claim against Dr. Haas, contending that his evaluation, diagnosis and treatment of plaintiff on October 13 fell below the standard of care exercised by reasonable emergency room physicians. On May 1, 1997, a medical review panel reviewing the emergency room records from October 13 and 15 concluded that there was no breach of the standard of care regarding Dr. Haas's evaluation, diagnosis and treatment of *1246 plaintiff on October 13. However, it did find that Dr. Haas's documentation of discharge instructions was inadequate and below the standard of care. The panel never addressed the issues of causation or damages.
Plaintiff filed suit against Dr. Haas and his medical malpractice insurer on June 26, 1997, again contending that Dr. Haas breached the standard of care in his evaluation, diagnosis and treatment of plaintiff and in his failure to give adequate discharge instructions, including an instruction to return to the emergency room if symptoms worsened or continued. At the conclusion of a jury trial, the jury returned a verdict finding that Dr. Haas did not breach the standard of care. Pursuant to the instructions on the jury verdict form and in light of the jury's response to this first inquiry, it did not address the questions of causation or damages. The trial court subsequently rendered judgment on April 15, 1999, in accordance with the jury's verdict, in favor of Dr. Haas and his medical malpractice insurer, dismissing plaintiffs claims with prejudice.
Plaintiff subsequently filed a motion for Judgment Notwithstanding the Verdict and, in the alternative, for a new trial. Through a judgment signed on June 24, 1999, the trial court denied both motions. Plaintiff appealed both the judgment dismissing her claims and the judgment denying her post-trial motions. On appeal, plaintiff assigns the following errors:
1. The trial court erred in failing to grant a Judgment Notwithstanding the Verdict.
2. Alternatively, the trial court erred in not granting a new trial.
3. The jury's verdict was manifestly erroneous because there was no evidence to support the jury's finding that the failure to document discharge instructions did not constitute a breach of the standard of care, and because the overwhelming weight of the evidence supported a finding that Dr. Haas breached the standard of care regarding his treatment of plaintiff.
4. In failing to find a breach, the jury did not consider causation and damages. Thus, the jury committed reversible error by failing to award appropriate damages.
5. The trial court erred in overruling plaintiff's objection to the testimony of Dr. Tassin, a member of the medical review panel, concerning his review of plaintiff's expert's deposition and report.

PROPRIETY OF ALLOWING MEMBER OF MEDICAL REVIEW PANEL TO TESTIFY AT TRIAL AS AN EXPERT FOR DEFENDANT
At trial, plaintiff called Dr. Robert L. Tassin to testify during the presentation of her case. Plaintiff offered, and the trial court accepted, Dr. Tassin as an expert in the field of emergency room medicine. Plaintiff proceeded to question Dr. Tassin regarding his role as a member of the medical review panel that evaluated plaintiff's medical malpractice claim. However, Dr. Tassin had been listed as an expert for defendant on the pretrial order. Accordingly, plaintiff ultimately objected to Dr. Tassin testifying as defendant's expert because Dr. Tassin had served on the medical review panel. The trial court overruled plaintiffs objection.
On appeal, plaintiff contends that it was improper for Dr. Tassin to testify as an expert for Dr. Haas because Dr. Tassin had served on the medical review panel that evaluated plaintiffs claim. However, it was the plaintiff who first called Dr. Tassin to the stand and only objected to Dr. Tassin's testifying after the defendant began to question him. Additionally, plaintiff has not provided this court with any jurisprudential support for her contention that medical review panel members cannot later be called to testify as an expert for one of the parties. In her brief, plaintiff relies on LSA-R.S. 40:1299.47 *1247 C(7) to support her contention. This statute provides in pertinent part as follows:
A panelist or a representative or attorney for any interested party shall not discuss with other members of a medical review panel on which he serves a claim which is to be reviewed by the panel until all evidence to be considered by the panel has been submitted. A panelist or a representative or attorney for any interested party shall not discuss the pending claim with the claimant or his attorney asserting the claim or with a health care provider or his attorney against whom a claim has been asserted under this Section. A panelist or the attorney chairman shall disclose in writing to the parties prior to the hearing any employment relationship or financial relationship with the claimant, the health care provider against whom a claim is asserted, or the attorneys representing the claimant or health care provider, or any other relationship that might give rise to a conflict of interest for the panelists.
[Emphasis added.]
It is clear from the context of this provision that the time frame for the prohibited discussions and contacts with medical review panel members is the time prior to the hearing and determination by the medical review panel. Nothing in the statute can be reasonably interpreted to prohibit contact or discussion between panel members and the parties involved in the claim after the medical review panel has issued its final opinion. Clearly, there is nothing in the statute to prohibit medical review panel members from subsequently testifying as an expert for either party at a trial concerning the same medical malpractice claim. LSA-R.S. 40:1299.47 H.
In the present case, plaintiff does not allege that any contact was made between Dr. Haas and Dr. Tassin prior to the panel's decision. Thus, we find no error in the trial court's decision to allow Dr. Tassin to testify as an expert for Dr. Haas at the trial of plaintiff's medical malpractice claim after the plaintiff had called him as a witness. This assignment of error lacks merit.

PROPRIETY OF JURY'S DETERMINATION THAT DR. HAAS DID NOT BREACH THE STANDARD OF CARE APPLICABLE TO EMERGENCY ROOM PHYSICIANS
In plaintiff's first three assignments of error, she contests the jury's finding that there was no breach of the standard of care by Dr. Haas. On the jury verdict form, the jury responded "NO" to the following question:
Did Dr. Michael Haas breach the standard or care as outlined in either paragraph 1 or 2 below?
1. He lacked the degree of knowledge or skill ordinarily practiced by physicians practicing in his specialty, or
2. He failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
Based on its negative response to the question, it is apparent that the jury concluded that Dr. Haas did not lack the degree of knowledge or skill ordinarily practiced by emergency room physicians, nor did he fail to use reasonable care and diligence, along with his best judgment, in applying that skill to his diagnosis and treatment of plaintiff.

Discharge Instructions
Plaintiff asserts that the jury's determination of no breach was clearly wrong in light of the medical review panel's previous determination and expert trial testimony that the documented discharge instructions were inadequate and below the standard of care expected of Dr. Haas. However, there was testimony from Dr. Haas that he gave additional verbal discharge instructions to the plaintiff that he failed to document. These additional verbal instructions included a common *1248 sense instruction to return to the emergency room if plaintiffs pain returned or her symptoms changed. Although plaintiff denied receiving this particular verbal instruction, it is undisputed that when plaintiff's pain intensified and additional symptoms emerged early Sunday morning, plaintiff returned to the emergency room for further evaluation and treatment.
We also note that all of the experts were not in agreement that the documented discharge instructions fell below the applicable standard of care. Further, the record reveals that when it rendered its May 1997 opinion, the medical review panel was not aware of the additional verbal instructions that Dr. Haas gave to plaintiff prior to her discharge on October 13.
Plaintiff's first expert, Dr. Carpenter, was the surgeon who performed the appendectomy. Dr. Carpenter, who was accepted as an expert in general surgery, testified that he does not always write down his discharge instructions, nor does he necessarily make a note of discharge instructions in the emergency room record. He testified that he would have told plaintiff to return to the emergency room or call her doctor if her pain increased or her symptoms changed. Finally, Dr. Carpenter agreed that the fact that discharge instructions are not documented does not mean that a doctor did not tell the patient what the instructions were.
Plaintiff's other expert, Dr. Theodore Struhl, whose specialty was general surgery, gave no opinion on the adequacy of the documented and/or verbal discharge instructions.
Dr. Tassin, who was accepted as an expert in emergency room medicine, testified that the medical review panel felt that the documented discharge instructions were less than what the panel would have liked to have seen, and that documentation could have been more detailed regarding potential worsening and what to do and look for. He stressed that the medical review panel opinion of a breach was based on the understanding that the only instructions given by Dr. Haas to plaintiff were the ones documented in the emergency room records, because the only information the panel reviewed was that contained in the October 13 and 15 emergency room records of plaintiff. Thus, at the time of the medical review panel opinion, the panel had no knowledge of verbal or additional instructions that may have been given to plaintiff. Dr. Tassin identified the problem with Dr. Haas's written instructions as the failure to document an instruction to return to the emergency room if plaintiff's symptoms worsened. However, Dr. Tassin, who testified before Dr. Haas testified, clarified that he was not saying that there was no verbal instruction given to that effect. Finally, Dr. Tassin acknowledged that he sometimes forgot to write something down and that he frequently gave patients additional verbal instructions.
Dr. Joseph Litner also testified for Dr. Haas as an expert in the field of emergency room medicine. While he agreed that Dr. Haas should have written down a discharge instruction to return to the emergency room if symptoms progressed, he also believed that such an instruction was a matter of common sense. Thus, Dr. Litner did not say that the documented discharge instructions, because of the failure to include an instruction to return if pain worsened, were below the applicable standard of care.
It is obvious that the jury rejected plaintiff's contention that Dr. Haas did not tell her to return if her symptoms worsened. We cannot say that such a credibility call on a factual issue was clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Moreover, in light of this factual determination that plaintiff was told by Dr. Haas to return if her pain worsened or other symptoms developed, and in light of the expert trial testimony on the issue of the adequacy of the instructions, we cannot say the jury was clearly wrong in concluding that there *1249 was no breach of the standard of care by Dr. Haas. Even if the documented discharge instructions alone were insufficient, once these documented instructions were supplemented with the additional verbal instructions given by Dr. Haas, the jury could have reasonably concluded that the discharge instructions as a whole did not fall below the applicable standard of care of an emergency room physician. See Stobart, 617 So.2d at 882-83.

Evaluation, Diagnosis and Treatment of Plaintiff
Plaintiff further asserts that the jury erred in concluding that Dr. Haas did not breach the standard of care in his evaluation, diagnosis and treatment of plaintiff. After a thorough review of the record, we find no error in the jury's conclusion that Dr. Haas did not breach the applicable standard of care in failing to diagnose plaintiff with appendicitis on October 13, or in his evaluation and treatment of plaintiff. As previously noted, several expert witnesses testified on this issue.
One of plaintiff's experts, Dr. Carpenter, who was not an expert in the field of emergency room medicine, admitted that it is harder to diagnose appendicitis in a female because the symptoms of appendicitis are also indicative of many other conditions. He acknowledged that plaintiff's complaints on October 13 were indicative of various conditions other than appendicitis. Dr. Carpenter noted that one option in a difficult diagnosis case where appendicitis was a possibility was to admit and observe the patient, but that this option was usually reserved for children and patients that the doctor did not feel comfortable sending home with instructions. Dr. Carpenter also agreed that a ruptured ovarian cyst could cause abdominal pain and a white blood cell count of 14,000.
Plaintiff's other expert, Dr. Struhl, who also was not an expert in the field of emergency room medicine, believed that Dr. Haas was at fault because he did not rule out appendicitis and did not order flat x-rays, a CAT scan or an abdominal ultrasound. He asserted that these additional tests would have ruled out a ruptured ovarian cyst and/or could have detected the appendicitis. His main criticism of Dr. Haas's evaluation and treatment of plaintiff was that Dr. Haas did not ask for advice from a surgeon or an obstetrician/gynecologist. However, Dr. Struhl agreed that a doctor could reach the wrong diagnosis and not breach the standard of care. Dr. Struhl also noted that his individual criticisms of Dr. Haas's actions alone did not indicate substandard care. Rather, it was the totality of these actions and/or inactions that led Dr. Struhl to conclude there was a breach in the standard of care. Dr. Struhl disagreed that a high white blood cell count was indicative of a ruptured cyst, although he noted it also did not "in and of itself" mean a patient had appendicitis. Finally, Dr. Struhl agreed that regardless of whether Dr. Haas missed the appendicitis diagnosis on October 13, plaintiff needed an appendectomy, although performing the appendectomy before October 15 may have avoided the perforation.
Dr. Tassin, an emergency room medicine expert, testified that the medical review panel felt that Dr. Haas's evaluation and treatment of plaintiff were appropriate. He personally had no problem with Dr. Haas's diagnosis on October 13 of a ruptured ovarian cyst in light of plaintiffs complaints, history and the ultrasound results. Dr. Tassin opined that most patients with appendicitis who come to the emergency room at the stage plaintiff came would be sent home with instructions to return if their pain returned. Dr. Tassin expressly disagreed with Dr. Struhl regarding the tests and other things that Dr. Struhl believed Dr. Haas should have done upon presentation of plaintiff with her complaints and history on October 13.
Dr. Litner, another expert in emergency room medicine, concluded that Dr. Haas's treatment of plaintiff was appropriate and within the standard of care expected of *1250 emergency room physicians. Dr. Litner opined that the ultrasound was the single best test to detect appendicitis, that a pelvic ultrasound would show lower abdominal pathology and that the appendix is located low in the abdomen. Based on plaintiff's clinical presentation, Dr. Litner had no problem with Dr. Haas's discharge of plaintiff on October 13, and he stressed that appendicitis is a tricky diagnosis. Additionally, Dr. Litner stated he did not know what else Dr. Haas could have done to diagnose appendicitis on October 13, and that the diagnosis of appendicitis on October 13 was impossible to make. Dr. Litner felt that Dr. Haas went further than most emergency room physicians would have gone under the circumstances, and that he would have made the same diagnosis (ruptured ovarian cyst) as Dr. Haas made in plaintiff's case on October 13. Finally, Dr. Litner disagreed with Dr. Struhl's opinion that Dr. Haas should have called a surgeon because this opinion was based on the assumption that plaintiff had an acute appendix on October 13, which she did not have.
Thus, the consensus among the emergency room medicine experts was that Dr. Haas did not breach the standard of care in diagnosing a ruptured ovarian cyst, rather then appendicitis, on October 13, nor did he breach the standard of care in his evaluation and treatment of plaintiff. These opinions were based on the medical records and other evidence revealing the symptoms plaintiff presented with on October 13, the history given to Dr. Haas by plaintiff, the results of his physical exam and the results of the lab work and other tests performed at the request of Dr. Haas on plaintiff. The only doctors who disagreed were plaintiff's experts, neither of whom was qualified as an expert in emergency room medicine.
Considering the above conflicting testimony, we cannot say that the jury committed manifest error in finding that Dr. Haas did not deviate from the applicable standard of care in his diagnosis and treatment of plaintiff. As an appellate court, we are required to give great deference to the jury's findings of fact when medical experts express different views, judgments and opinions on whether the standard of care was met in a particular case. While we might differ in our factual conclusions had we been sitting as the trial court, in accordance with the requisite standard of review, we are compelled to affirm the trial court's findings. See Corley v. State, Department of Health & Hospitals, 32,613, p. 27 (La.App. 2nd Cir.12/30/99), 749 So.2d 926, 941. Thus, we cannot disturb the jury's finding that Dr. Haas did not breach the standard of care in his evaluation, diagnosis and treatment of plaintiff on October 13.
Because we find no manifest error in the jury's determination that Dr. Haas did not breach the applicable standard of care in his evaluation and treatment of plaintiff, we also find no error in the trial court's denial of plaintiffs motion for judgment notwithstanding the verdict, and alternatively, for new trial.[2] These assignments of error are meritless.[3]

CONCLUSION
For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff.
AFFIRMED.
NOTES
[1] Hon. Durwood W. Conque, 15th Judicial District Court, is serving as judge pro tem. by special appointment of the Louisiana Supreme Court.
[2] See Broussard v. Stack, 95-2508, pp. 16-17 (La.App. 1st Cir.9/27/96), 680 So.2d 771, 781, for a comparison of the standards of review that must be overcome to reverse the denial of a motion for judgment notwithstanding the verdict and new trial with the standard of review applied to a jury's determination of whether a breach in the standard of care existed.
[3] In light of our resolution of these assignments of error, we need not address plaintiff's remaining assignment of error, which contests the failure of the jury to award damages.